IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS HALBROOK, individually as the lawful father and as Personal Representative of the Estate of Beau Jean Halbrook, and CHERI HALBROOK, individually as the lawful mother of Beau Halbrook | ) | |
| Plaintiffs, | ) | Case No. 4:26-cv-1927 |
| v. | ) | |
| PHELPS COUNTY SHERIFF'S DEPARTMENT, PHELPS COUNTY JAIL, SHERIFF MICHAEL J. KIRN, JOE TAYLOR, SERGEANT RODGER ANDERSON, SARAH REED, SEAN ELLIOTT, JONATHAN STROOT, STEPHANIE BENNETT, TUCKER WATSON, BRITTNEY IRVAN, RAMSEY SOLOMON, RYKER WILSON, BROOKE SHRUGA, REGINALD BRIGHAM, DANIEL RITTER, CORRECTION OFFICERS DOES 1-15, ADVANCED CORRECTIONAL HEALTHCARE INC., SHANNON GEHLERT, RN, NURSE DOE 1, NURSE DOE 2, DR. DOE 1 AND Dr. DOE 2. | ) | JURY TRIAL DEMANDED |
| Defendants. | | |

## COMPLAINT

The above-named Plaintiffs, through their attorney, David S. Corwin of Corwin Law Group LLC, and by way of claim of theirs and alleges based on personal knowledge as to their own actions, and on information and belief as to all other matters, states as follows:

## INTRODUCTION

1. This civil action arises out of the tragic death of Beau Jean Halbrook ("Beau or Halbrook") on November 14, 2023, while being held as a pretrial detainee at the Phelps County Jail in Rolla, Missouri. This is an action for damages brought to redress the deprivation, under color of state law, of rights, privileges and immunities secured to Plaintiff by provisions of the Eighth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §1983. Beau Halbrook is survived by statutory beneficiaries under the Missouri Wrongful Death statute.

2. All prisoners in our criminal justice system have the right to adequate medical care while they are incarcerated. This claim involves the shocking and preventable death of inmate Beau Halbrook, due to the gross negligence and medical malpractice of Phelps County Sheriff's Department, Phelps County Jail and Phelps County correctional employees listed above.

3. Staff at Phelps County Jail left Beau with not one, but two open, festering, and horribly painful perforations in his gastrointestinal track and abdomen. With complete indifference to Beau's medical plight, they failed to provide even basic medical care. Staff at Phelps County Jail watched him suffer and succumb to clear signs of pain, suffering and what were obvious symptoms due to internal bleeding and communication of his stomach contents and abdominal and pleural cavities, which caused his premature death. It is further alleged that had timely medical care been provided by the above listed Defendants, Beau Halbrook would not have died.

4. Plaintiffs allege that while housed as a pretrial detainee at the Phelps County, Missouri Jail between the approximate dates of November 9, 2023, and November 14, 2023, Beau Halbrook suffered from serious medical needs that were so obvious that even a lay person would easily recognize the necessity for a doctor's attention to those needs.

5. Plaintiffs allege that while housed at the Phelps County, Missouri Jail, Defendants, under color of state law and with deliberate indifference, failed to provide medical care or direct that medical care be provided or allow Beau Halbrook to obtain the medical care needed within a reasonable time.

6. Beau Halbrook is survived by statutory beneficiaries, including Plaintiffs, under the Missouri Wrongful Death statute.

## JURISDICTION

7. This Court has federal question jurisdiction, pursuant to 28 U.S.C. §§1331and 1343, because Plaintiffs' present federal claims arising under the Eighth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, and 42 U.S.C. §1983 claims.

8. This Court has jurisdiction over these claims as they arise under the Constitution of the United States of America and have been brought before this Court pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over Defendants because the unlawful acts alleged in this Complaint were committed in Rolla, Phelps County, Missouri, which lies within the Eastern District of Missouri.

9. This Court has jurisdiction over the state law claims as alleged herein, including claims alleged pursuant to the Missouri Wrongful Death Statute, R.S.Mo. §537.080. This Court has supplemental jurisdiction over the related state law claims arising under Missouri law are so

related as to form part of the same case or controversy arising under Plaintiffs' 42 U.S.C. § 1983 claims.

## VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 105(b) and 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Rolla, Phelps County, Missouri, which lies within the Eastern District of Missouri.

## PARTIES

11. Plaintiffs Dennis and Cheri Halbrook, the parents of Beau Halbrook currently reside and domicile in Phelps County Missouri. Dennis Halbrook is the duly appointed personal representative of the Estate of Beau Jean Halbrook.

12. Defendant Phelps County, Missouri Jail is operated by the Correctional Division of Defendant Phelps County, Missouri Sheriff's Department. The Phelps County, Missouri Jail and the Phelps County, Missouri Sheriff's Department (collectively, "Phelps County") are located in Rolla, Phelps County, Missouri. Phelps County has an obligation under the United States Constitution to provide adequate medical care to those individuals whom it punishes by incarceration—including Beau Halbrook—and for all relevant times contemplated herein, acted under color of state law.

13. Upon information and belief, Defendant Sheriff Michael Kirn was the lead supervisor and/or Director of the Phelps County, Missouri Jail and/or Phelps County, Missouri Sheriff's Department, with job duties which included the training, facilitation and supervision of the medical services provided to all inmates of the Phelps County Missouri Jail including Plaintiff,

during the approximate period of November 9, 2023, through November 14, 2023. Kirn is being sued in his individual and official capacities.

14. Upon information and belief, Defendant Joe Taylor was all times relevant the Administrator and Correctional Officer of the Phelps County, Missouri Jail, with duties which included the facilitation and supervision of the medical services provided to all inmates of the Phelps County Missouri Jail including Beau Halbrook, during the approximate period between November 9–14, 2023. Joe Taylor is being sued in his individual and official capacities.

15. Upon information and belief, Defendant Sergeant Rodger Anderson was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Anderson is being sued in his individual and official capacities.

16. Upon information and belief, Defendant Officer Sarah Reed was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Reed is being sued in her individual and official capacities.

17. Upon information and belief, Defendant Officer Sean Elliott was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Elliott is being sued in his individual and official capacities.

18. Upon information and belief, Defendant Officer Jonathan Stroot was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Stroot is being sued in his individual and official capacities.

19. Upon information and belief, Defendant Officer Stephanie Bennett was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Bennett is being sued in her individual and official capacities.

20. Upon information and belief, Defendant Officer Tucker Watson was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Watson is being sued in his individual and official capacities.

21. Upon information and belief, Defendant Officer Ramsey Solomon was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Solomon is being sued in his individual and official capacities.

22. Upon information and belief, Defendant Officer Ryker Wilson was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including

Beau Halbrook, during the approximate period between November 9–14, 2023. Wilson is being sued in his individual and official capacities.

23. Upon information and belief, Defendant Officer Brooke Shruga was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Shruga is being sued in her individual and official capacities.

24. Upon information and belief, Defendant Officer Reginald Brigham was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Brigham is being sued in his individual and official capacities.

25. Upon information and belief, Defendant Officer Daniel Ritter was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Ritter is being sued in his individual and official capacities

26. Upon information and belief, Defendant Officer Brittney Irvan was employed by Phelps County and provided services in that capacity, including, but not limited to, the facilitation and supervision of medical services to all inmates of the Phelps County, Missouri Jail, including Beau Halbrook, during the approximate period between November 9–14, 2023. Irvan is being sued in her individual and official capacities.

27. Advanced Correctional Healthcare, Inc. ("ACH") was, and is, a corporation authorized to do business within the jurisdiction of the Rolla, Phelps County, Missouri, which lies in the Eastern District of Missouri. ACH was duly organized, created, and has its principal place of business in Franklin County, Tennessee. Defendant ACH regularly conducted business in Rolla, Phelps County, Missouri, which lies in the Eastern District of Missouri, in conjunction with Defendant Phelps County.

28. Upon information and belief, and at all relevant times contemplated here in, ACH and/or its subsidiary/related companies reached a meeting of the minds and/or mutual understanding, orally and/or in writing, with County to recruit, contract, employ, train, compensate, and supervise healthcare professionals to provide healthcare services including, but not limited to, examinations, treatment, and care to all of the inmates housed at the Phelps County, Missouri jail at least between the approximate dates of November 9-14, 2023. Accordingly, ACH was a willing participant with Phelps County and/or its agents in the joint action that violated Beau Halbrook's Eighth Amendment right under the United States Constitution and thus qualifies as a state actor acting under collar of state law for purposes of this lawsuit under 42 U.S.C. §1983.

29. Advanced Correctional Healthcare, through its employees, agents, or partners, including Defendants Shannon Gehlert, Nurse Doe 1, Nurse Doe 2 and Dr. Doe 1 and Dr. Doe 2, and in conjunction with and pursuant to its meeting of the minds, mutual understanding, and joint action with Phelps County, exercised control over the medical policies, customs, and procedures that directly resulted in the deliberate indifference to Beau Halbrook's serious medical needs.

30. Upon information and belief, each of the following individuals including Defendants Shannon Gehlert, Nurse Doe 1, Nurse Doe 2 and Dr. Doe 1 and Dr. Doe 2, are Missouri residents and were contracted and/or employed by ACH and/or Phelps County to provide correctional services and/or medical services to inmates housed at the Phelps County, Missouri Jail where plaintiff was

confined and where the acts and omissions that give rise to Plaintiffs' claims. As such, at all relevant times contemplated here in and while acting under the color of state law, the listed parties materially participated in deliberately disregarding Beau Halbrook's serious medical needs by failing to provide the medical care or direct that medical care be provided or allow Beau Halbrook to obtain the medical care needed within a reasonable time including, but not limited to, certain examinations, treatment, and care.

## ALEGATIONS COMMON TO ALL COUNTS

31. On November 9, 2023, Beau Halbrook was taken to the Phelps County Jail by the Rolla Police Department and placed on a 24-hour hold pending the issuance of a warrant by the Phelps County, Missouri Circuit Court. A warrant for the arrest of Halbrook was issued on November 10, 2023. Beau Halbrook died on November 14, 2023, while a pretrial detainee at the Phelps County Jail.

32. Defendant Stephanie Bennett prepared the booking sheet for Beau Halbrook on November 9, 2023. At the time of his booking, Beau Halbrook told Defendant Stephanie Bennett that he was a daily opiate user and that he had taken two fentanyl "beans" just hours before his arrest by the Rolla Police Department. Beau Halbrook was assigned and confined to the B pod at the jail. He was housed with a number of other inmates.

33. On November 10, 2023, Beau was evaluated, and according to a clinical opiate withdrawal scale (COW scale), and was rated a number 3. At the time, it was recorded that Beau had an elevated blood pressure in combination of complaints of stomach cramps. During his confinement, Beau Halbrook continued to experience severe and escalating pain in his abdomen and/or chest.

34. Inmates watched Beau Halbrook cry out in pain and beg for help. He could not stand upright. He could not keep food down. He was actively vomiting. His fellow inmates — repeatedly, urgently — pressed the emergency button. They began banging on the doors. Not a single guard responded.




35. Upon information and belief, Beau repeatedly reported his pain to one or more of the Defendant jailers and staff throughout his confinement.

36. On November 14th, during evening headcount, one or more Defendants saw Beau Halbrook lying on a mat on the second floor of the pod. He was barely responsive, had vomited and was in agony. The Defendants then called at least three (3) other defendants to assist.



37. Upon information and belief, Lieutenant Joe Taylor, recognizing the severity of Beau's condition, informed a nurse that Beau required immediate medical attention. The nurse, however, refused to evaluate Beau on the grounds that the medical request form had not been completed. Upon returning to B pod, Lieutenant Taylor advised Beau of the nurse's refusal yet took no further action and failed to call for emergency medical services.

38. Upon information and belief, Officer Ritter was informed by Lieutenant Taylor of Beau's deteriorating condition and the nurse's refusal to evaluate him. Despite being made fully aware of Beau's serious and immediate medical need, Officer Ritter failed to take further action and failed to call for emergency medical services.

39. Upon information and belief, one of the individuals who observed Beau lying on the floor in great pain was Defendant Solomon, who recognized that Beau required medical attention. Solomon retrieved a medical visit request form; however, Beau was in such severe pain and distress that he was incapable of completing it. It is believed that Officer Solomon then filled out the medical request form on Beau's behalf, folded it in half, and never submitted it. Despite witnessing Beau's obvious and serious medical need, neither Solomon nor any of the other Defendants took any steps to seek emergency medical assistance on his behalf.

40. At one point there were at 4-5 of the defendants standing around Halbrook. Rather than call for emergency medical services, these defendants, forced Halbrook – who was unable to walk down the steps under his own power -down to the booking area for “observation”. Two of the defendant guards physically held Halbrook up, supporting his body as they guided him down the steps. Despite his inability to walk down the steps independently, no defendant called for emergency medical services.




41. Despite the obvious need for medical attention, Defendants took no meaningful steps to evaluate Beau Halbrook's condition or transport him to a hospital. Instead, they handcuffed him to a bench in the booking area.




42. At one point, and after Beau Halbrook had unsteadily walked to the bathroom, he collapsed. Because Beau was unable to stand or walk, video surveillance shows Defendants

Rodger Anderson and Ryker Wilson dragging Beau on the floor from the hallway back into the booking area. This act alone exhibits a conscious disregard and indifference to Beau Halbrook's obvious and serious medical condition and immediate need for medical attention.







43. Defendant Ryker Wilson stood next to Beau's motionless body for several minutes, without rendering aid and taking no action. Defendant Brooke Shruga likewise passed Beau on

multiple occasions and, rather than summoning assistance, permitted other female inmates to step around him while moving to and from the bathroom.












44. After days of agonizing, obvious and untreated pain, Beau Halbrook died. An autopsy revealed that Beau Halbrook's death resulted from a serious medical condition that would have

been treatable had he received prompt medical care. Plaintiffs are informed and believe that Defendants' failure to respond to his repeated complaints and obvious distress caused or contributed to his death. Defendants were aware that Halbrook had a serious medical need. The severity of his symptoms, his repeated complaints, and the pleas of other detainees put jailers and medical staff on notice of a substantial risk of harm. Defendants deliberate indifference to Beau's serious illness or injury, constitutes cruel and unusual punishment. The Fourteenth Amendment requires that pretrial detainees receive adequate medical care.

45. Notwithstanding this duty, Defendants failed or refused to seek outside medical care, provide diagnostic testing, or transfer Halbrook to a hospital. Such refusal, despite knowledge of his serious medical need, constitutes deliberate indifference.

46. Defendants Phelps County and the Sheriff's Department maintained policies and customs that were the moving force behind the violation of Beau Halbrook's constitutional rights. Specifically:

a. There was an established custom at the Phelps County Jail of ignoring or delaying treatment for inmates who complained of serious medical conditions. In a prior case, Bilal Hasanie Hill, a pre-trial detainee at the same jail, repeatedly complained of extreme pain and developed a lump on his neck. ACH staff and Phelps County Sheriff's Department jail officials failed to obtain timely care; he was only taken to a hospital months later and was diagnosed with terminal lung cancer. Hill filed suit alleging deliberate indifference, and a federal jury awarded $8.5 million against ACH and medical staff. Phelps County Sheriff's Department and ACH were on notice of systemic deficiencies in the jail's medical care and the need to correct them.

b. Defendants failed to implement adequate policies for monitoring detainees' health, ensuring timely responses to sick-call requests, and training staff to recognize and respond to medical emergencies. Phelps County failures amount to deliberate indifference and constitutes an official policy. Here, despite prior incidents, Phelps County continued to contract with ACH and failed to supervise or train jailers and medical staff to respond appropriately to inmate medical complaints. Defendants failed to enforce any policy requiring immediate referral to hospital care when a detainee exhibited persistent and severe pain, resulting in a culture of disregard for inmates' health.

c. Defendants owed Beau Halbrook a duty to provide reasonable and constitutionally adequate medical care. Phelp's jail policies or customs that prioritized cost savings over proper treatment. The jail's policies emphasized not sending detainees to hospitals absent extreme circumstances. Phelps Sheriffs failure to adequately train and supervise its staff at Phelps County Jail constituted deliberate indifference and negligence;

d. Defendants ignored established protocols requiring monitoring detainees who were known to be drug users and expected to go through withdrawal. The intentional failure to follow these protocols constituted deliberate indifference and negligence.

47. John Does 1–10 were jailers and/or medical personnel who personally observed or received complaints about Beau Halbrook's condition yet failed to act. They knew or should have known that Beau faced a substantial risk of serious harm but disregarded that risk, violating their duty of care.

48. As a direct and proximate result of Defendants' conduct, Beau Halbrook experienced conscious pain and suffering and ultimately died. Plaintiff and Halbrook's surviving family members have suffered severe grief, loss of companionship, support, and consortium, and have incurred funeral and medical expenses.

COUNT I
(42 U.S.C. § 1983 – Deliberate Indifference
To Serious Medical Needs Against All Defendants)

49. Plaintiff incorporates by reference all preceding paragraphs.

50. Defendants, acting under color of state law, had a duty to provide Beau Halbrook with adequate medical care. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause.

51. Beau Halbrook had a serious medical need. The severity of his pain, inability to eat, and visible distress made his need obvious to laypersons, including Defendants. Despite this knowledge, Defendants failed to provide timely medical attention.

52. Defendants' actions and inactions constitute deliberate indifference. They consciously disregarded a substantial risk of serious harm by ignoring repeated pleas for assistance. The Eighth Circuit requires both an objective and subjective analysis: the risk must be obvious, and the official must have actual knowledge of the risk. Here, the risk was obvious, and Defendants' awareness is evidenced by repeated complaints from Beau Halbrook and other detainees.

53. Defendants consciously and deliberately failed to maintain adequate surveillance of Beau Halbrook while he was on opioid withdrawal precaution. On information and belief, Defendants failed to remain present at assigned posts to monitor inmate/detainees such as Beau Halbrook. Defendants failed to respond to Beau Halbrook and other inmates' requests for medical treatment. Defendants failed to promptly call 9-1-1 after finally responding to Beau Halbrook's obvious health crisis.

54. The policies, customs and practices of Phelps County, the Sheriff's Department were the moving force behind the constitutional violations. Under *Monell*, local governments and private entities acting under color of state law can be sued when an official policy or custom causes a constitutional deprivation. The County's failure to correct known deficiencies in jail healthcare, despite prior lawsuits and verdicts demonstrate deliberate indifference. As a result of Defendants deliberate indifference, Beau Halbrook endured extreme pain and agony before his death, and Plaintiffs have sustained damages as set forth herein. Defendants' conduct was willful, wanton, and malicious, justifying the award of punitive damages.

COUNT II

(Failure to Train and Supervise, 42 U.S.C. § 1983,
Against Phelps County, Phelps County Sheriff's Department and ACH)

55. Plaintiff incorporates by reference all preceding paragraphs.

56. Phelps County, its Sheriff's Department had a duty to adequately train and supervise their employees, including correctional officers and medical staff, regarding the medical needs of detainees and the procedures for responding to medical emergencies.

57. Defendants failed to train employees on recognizing serious medical conditions, responding promptly to inmate complaints, and seeking outside medical care. They also failed to supervise employees to ensure compliance with constitutional requirements.

58. Defendants Kirn and Taylor completely disregarded known failures in policies and procedures to monitor the health and safety of inmates/detainees in Phelps Jail. Defendants Kirn and Taylor further failed to properly monitor and supervise those under their direction and control, to ensure that their deputies were properly monitoring or responding to those inmates/detainees with serious medical needs. Municipal liability may arise where the failure to train amounts to deliberate indifference to constitutional rights. Defendants' failure to train and supervise, despite known deficiencies and prior lawsuits, reflects a deliberate or conscious choice and constitutes an official policy or custom.

59. The lack of training and supervision was the moving force behind the constitutional violation and Beau Halbrook's death. Defendants are therefore liable for damages.

COUNT III

(Wrongful Death R.S.Mo. § 537.080 Against All Defendants)

60. Plaintiff incorporates by reference all preceding paragraphs.

61. Under Missouri's wrongful-death statute, when a person's death results from conduct that would have entitled him to recover damages had he survived, the liable party is liable in an action for damages. Damages may include pecuniary losses, funeral expenses, and the reasonable value of services, consortium, companionship, comfort, guidance, and support of which the survivors have been deprived.

62. Defendants owed Beau Halbrook a duty to provide reasonable care. Their negligent and wrongful acts—failing to provide medical attention, failing to follow up on his complaints, and failing to transport him to a hospital—breached that duty.

63. Defendants' negligence directly and proximately caused Beau Halbrook's death. Had he received timely medical care, his condition would have been treated, and he would not have died.

64. Plaintiff and Beau Halbrook's surviving family members have suffered and will continue to suffer pecuniary and non-pecuniary damages, including but not limited to medical and funeral expenses, loss of support, services, consortium, companionship and guidance, and other damages permitted by R.S.Mo. § 537.090.

65. Defendants' actions were willful, wanton and showed complete indifference to or conscious disregard for the safety of others, entitling Plaintiff to punitive damages.

66. Aggravating circumstances were present herein, specifically the conduct of Defendants on November 14, 2023, constituted reckless indifference and conscious disregard for the safety of Beau Halbrook, thereby justifying the imposition of punitive damages.

67. The breach of duty directly and proximately caused Beau Halbrook's pain, suffering and death. Plaintiff is entitled to damages for the wrongful death under Missouri law.

COUNT IV

(Negligence/Medical Malpractice Against ACH,
Nurse Shannon Gehlert, Nurse Doe 1, Nurse Doe 2 and Dr. Doe 1 and Dr. Doe 2)

68. Plaintiff incorporates by reference all preceding paragraphs.

69. At all times relevant herein, it was the duty of Defendants to exercise that degree of skill and care that ordinarily well-qualified nurses and physicians possess and exercise under similar circumstances in the aforementioned locality or similar localities in which the aforementioned treatment was rendered to decedent Halbrook.

70. ACH and its medical staff owed Beau Halbrook a duty to provide medical care that met the standard of care for healthcare providers in correctional settings. They breached that duty by failing to assess his condition, diagnose his underlying illness, prescribe appropriate treatment, or transfer him to a hospital.

71. Defendants negligently and unskillfully failed to exercise that degree of skill and care that ordinarily well-qualified nurses and physicians would exercise in similar circumstances, in that Defendants:

a. Improperly evaluated Beau Halbrook;

b. Improperly monitored and assessed Beau Halbrook;

c. Failed to communicate with the physicians and other care providers involved in Beau Halbrook's incarceration;

d. Failed to order appropriate testing, monitoring, and medication;

e. Failed to transfer Beau Halbrook to the emergency room of a local hospital;

f. Failed to follow established protocol for evaluating and monitoring of Beau Halbrook knowing he may be going through withdrawal due to his know drug use; and

g. Otherwise negligently cared for Beau Halbrook.

72. Defendants knew, or should have known, that the actions above could or would result in

injury and death to Beau Halbrook. Defendants' negligence caused or contributed to cause injury and death to Beau Halbrook. As a direct and proximate result of the negligence and unskillfulness of Defendants, Beau Halbrook suffered injuries including pain and suffering up to the time of his death.

73. As a direct and proximate result of the conduct of the Defendants as aforesaid, Plaintiffs were forced to expend monies for funeral and burial expenses in connection with their sons death, and for such other expenses in an amount that at this time Plaintiffs are unable to state with exactitude.

74. As a direct and proximate result of the conduct of the Defendants as aforesaid, Plaintiffs have been forever deprived of Beau Halbrook's services, companionship, comfort, instruction, guidance, counsel, and support.

75. As a direct and proximate result of the conduct of the Defendants as aforesaid, Plaintiffs have suffered great mental pain and anguish resulting from their son's premature death in an amount that Plaintiffs are unable to state with exactitude at this time.

76. As a further direct and proximate result of the negligence and carelessness of the Defendants Beau Halbrook was forced to suffer great mental and physical pain and anguish prior to his death, was aware of his imminent death and the anguish associated therewith for which Plaintiffs are entitled to recover, all in an amount that Plaintiffs are unable to state with exactitude at this time.

77. Aggravating circumstances were present herein, specifically the conduct of Defendant ACH and Ghelert constituted reckless indifference and conscious disregard for the safety of Beau Halbrook, thereby justifying the imposition of punitive damages.

78. The breach of duty directly and proximately caused Halbrook's pain, suffering and death.

Plaintiffs are entitled to damages for wrongful death under Missouri law.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court after trial by jury enter judgment in favor of Plaintiff and against Defendants on all counts for compensatory damages in an amount to be determined at trial for Beau Halbrook's pain and suffering and for Plaintiffs' and surviving family members' losses, including funeral and medical expenses, loss of companionship, support and consortium, and other damages allowed under 42 U.S.C. §1983, R.S.Mo. §537.090; Award exemplary, aggravated or punitive damages against Defendants; Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws; Award pre- and post-judgment interest as allowed by law; Grant such other and further legal and equitable relief as the Court deems just and proper.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

Corwin Law Group LLC

*/s/ David S Corwin*
David S. Corwin MO #38360
7710 Carondelet Ave., Suite 222
St. Louis, Missouri 63105
(314) 685-8849 T
(314) 287-4583 F
dcorwin@corwinlawgroup.com

*Attorney for Plaintiff*